Good morning, your honors. My name is Eric Amador and I represent the Appellant National Union. I think that this appeal has been briefed pretty well. I don't want to go back through our brief on every point. I do, however, want to put some emphasis on the issue of preemption. It's already difficult enough for a litigant seeking declaratory relief or declaratory judgment to go into a federal district court and overcome issues of discretionary abstention under the Brilhart Doctrine. But what has happened here as it's being applied, the Arizona statute has created a much higher barrier to litigants who are seeking a neutral forum and using diversity jurisdiction for the purpose for which it was written, which is to avoid being hometowned, with all respect to any particular state court, go into federal court and find a neutral forum. This statute is being applied here as the ogre under the bridge to the courthouse. It's not yes, sir. One thing. Could you clarify, there was a state court case pending at the time you filed your diversity case. Was that case the underlying tort case or was there a coverage dispute in that state court case? There was no coverage dispute in that state court case. And under the E.L. Jones case in Arizona, it would have been improper to litigate the coverage issues in that case. In our case, Judge Campbell specifically suggested that we could have raised those coverage issues in the state court case. And that was manifestly erroneous. We could not have. It would have been prejudicial. I guess I'm sensitive to your hometown argument, although this is the Maricopa County Superior Court, which is the largest superior court in the state of Arizona. And you're drawing the jury for the federal court basically from pretty much the same pool that the Maricopa County Superior Courts draw their jury. But wouldn't it have made more sense from a judicial administration standpoint, maybe this is the judge's view, to file a companion action in Well, in our experience, and we've litigated coverage issues around the country, it's not always the right judge for a declaratory relief action as for a tort action. We like a judge who's familiar with insurance issues, and it tends to be rather technical. And this isn't just Arizona. And I don't mean to suggest that there's some bias in Arizona. Well, when you use the word hometown, that's the only meaning I know of bias. Right, but I'm talking about the general policy of affording a neutral forum in federal court, which I think underlies diversity jurisdiction to a large extent. But that's a discretionary determination by the district. I mean, are you saying the district court should have no discretion then? Then what's the purpose of giving the district court a choice if the district court is compelled in all of these types of cases to accept jurisdiction? Your Honor, I'm sorry. I don't mean to suggest that district judges don't have discretion to abstain under the Brillhart Doctrine. They do. And he did, and we couldn't really appeal from that determination. That's fine. All I'm saying is that in this case in particular, with this attorney fee statute, there has become this big club that bludgeons us on our way out of the courthouse. And this appeal is not about the money, $22,000. I don't know if the appeal might cost more than that. It's a big, big problem because in theory, we could have states around the country, basically the way it's applied here, drafting a statute that says if you go into federal court and try and invoke your diversity jurisdiction rights in federal court, and you lose not on the merits of the case, just purely on the judge's discretion not to hear the case because it's a declaratory judgment action, you're going to have to pay attorney's fees. But aren't we bound by the state court's interpretation of what a prevailing party is for purposes of attorney's fees? If the Arizona Supreme Court had determined this exact issue, which it has yet to do, then yes. Except to the extent that a preemption would trump state law on that. I don't know about that argument. But even if the Arizona Supreme Court hasn't ruled, aren't we supposed to predict from other rulings how the Supreme Court would rule? Yes. And so what's your argument on that, on how we should read the Arizona cases that do exist? Yes. There are a lot of cases out there, including Arizona district court cases as well. And we went through them in our brief, and the other side cited a lot of them, and we went back in our reply. There are probably 15 to 20 cases. If you go through them one by one, you should look at, in particular, whether the decision in that particular case addressed the merits of the dispute. There were a case involving a dismissal for failure to prosecute, which would have been therefore the party basically won the defendant in that case. There are summary judgment rulings. But we don't have any cases in Arizona, or otherwise, saying that where a district judge dismisses not on the merits, but simply under Brilhart, that is a contested matter arising out of a contract, and the other party is successful on the merits of the litigation. And if you look at Arizona Rules of Civil Procedure, Rule 54G, it talks specifically about a decision on the merits as a predicate to an attorney fee award. So, and also, under the Wagon Seller case in Arizona, they have a six-factor test dealing with the merits of the opposing party's case, whether the opposing party could have settled his dispute, whether there's hardship from an award of fees, whether the prevailing party prevailed as to substantially all his claims, whether the litigation involved a novel issue, and whether an award of fees would provide a deterrence to bringing this claim of that nature. What do we do with the fact that Judge Campbell recognized and applied those six factors in articulating his decision, and we're No, no, the way he read them, he reads merit as merit of the discretionary dismissal issue, not So, assuming that we disagree with your position on the constricted reading of merits, you don't have any challenge to the fact that he would apply to this case? I think that the six factors that he identified are truly the six factors under Wagon Seller. Okay. All right. But the issue is whether or not, because of the unique procedural posture of this case, there was a final determination on the merit. He applied those factors as to the abstention motion, the 12B motion. He did not apply them as to the merits of the lawsuit. So he had a telescope, and it was focused, and everything was great, but he was looking at the wrong thing with his telescope. And that, to me, is a clear legal error. Well, let me ask you this. I hear your argument, and it's a good argument, but what do we do in the situation where the court issues a ruling and the underlying tort case gets settled or dismissed, there's no further action, that wouldn't this be final with regard to disputes arising out of the contract as between these parties? That's a hypothetical situation. I don't see why there is a strong policy for an award of... That's a hypothetical. But I don't see why there would be a policy under this statute for fees to award fees in that scenario. It would become a non-event, the dismissal, in federal court. It was never litigated. But it's still a litigation dispute arising out of the contract. But there's nothing on the merits. It was we walked into the courthouse, the judge pushed us out the door again and said go file in state court. But that doesn't ever get to the dispute. We could have been right in that scenario, ultimately, if we had litigated the coverage issues. We could have gone into state court. We could have won, hypothetically. And then wouldn't you be able to recover fees from the insured under the same statute from the Arizona Superior Court? You know, we have never litigated that issue. And I hadn't even thought about it. But not those fees. Not the fees that you would have paid for being in federal court. I think when you are entitled to fees, you go back to the beginning of the lawsuit, including all the steps of it. But then there would have been determination on the merits. You're vulnerable under the contract for the fees for the defense of the underlying tort suit. Yeah, if there's a duty to defend, you pay for the defense costs. But you're not liable under the contract for the fees incurred by the other side in seeking to have the district court abstain. Correct. You're liable under the Arizona statute. Correct. I don't understand that question. Well, let me see if I can rephrase it. As I understand it, the policy of Arizona is to overturn the American rule that otherwise applies. Everybody bears their own expenses. In contract actions. Right. So now we have a policy, a substantive policy of the state of Arizona that says in litigation or disputes arising out of a contract, the prevailing party may recover fees. Contested matter, though. Okay. Contested matter. So my question is, why wouldn't it be proper for fees to be assessed with regard to the declaratory judgment action and fees to be assessed against or in favor of the prevailing party in the Maricopa County tort action, depending on how that case gets worked out? If the purpose is to overturn the American rule. Boy, if the Maricopa County tort plaintiff, well, no, there were contract claims in that case. So now I'd hate for any of this to be held against me in some future litigation in the underlying action. I don't mean to. That's the risk you take when you stand up. I know, but I'm not a lawyer. I'm not a lawyer in that case. I don't represent anyone in that case. That's just someone else's case as far as we're concerned at this point. But if the plaintiff in the underlying torts, and I think there are contract elements of that case, prevailed, then he would have to look at whether he could win attorney's fees in that action to the extent that it was a contract-based action and perhaps under the statute he could. Now, if he did, then the insured in that action would have to come to us and say, do we have insurance coverage for those fees? Now, that is an issue that raises all these coverage issues that I don't want to get into here. But there are major coverage issues as to attorney's fees. But that's a separate lawsuit. Now, in our action, if we went forward on declaratory relief and won our action ultimately on the merits, then we would look at whether we could recover attorney's fees under the statute. I don't know the answer to that. There might be an exception for declaratory relief actions. I'm not aware of one. But there might be a ground for attorney's fees. And I'm not saying we would assert them or we would do that to a third party. But my understanding is third parties are liable for attorney's fees under the statute, even if they're not a party to the contract. Do you want to save some time for rebuttal? Sure. Okay. Thank you. Good morning, judges. E.J. Kodolek on behalf of 757BD. Conspicuously absent from the discussion you just heard was any mention of the recent decision of this court in the Payne case. And I would submit to your honors that that case resolves the issue under the Arizona statute, whether or not there needs to be an adjudication on the merits in order for there to be an award of attorney's fees. I think the Payne decision relies on the same case law that's cited in 757's brief. And you've heard no argument as to why that decision should not be instructive, at least as to this panel's decision in this case. So I would start by emphasizing the importance of that decision and the lack of any discussion concerning that decision in counsel's opening argument. In answer to your question, Judge Tolman, about what's the scope of the attorney's fee statute in Arizona, the statute applies generally to any claims arising out of contract, as long as contract was a factor in the underlying litigation. So the statute is broadly applied in contract actions. And that's really the key here. Because what we're talking about is a declaratory judgment filed in federal court where the essence of the issue is the interpretation, contract coverage issues under Arizona law. There's no reason to think that the application of that statute in the context of an action filed in federal court for declaratory judgment is going to discourage any insurance company from applying that statute. It's going to discourage any insurance company from filing a declaratory judgment action in federal court under the right circumstances. And Judge Campbell, if you look on page 9 of his order, he specifically talks about this very issue and says, look, when you're talking about the Brilhart factors that counsel is talking about and the discretionary ability of a federal court in a declaratory judgment action to decline jurisdiction, in the proper case, you can certainly have a declaratory judgment action filed by an insurance company in federal court. The problem here, Your Honors, was that this was not the proper case. We had a parallel proceeding going on in state court. And there was a multitude of Ninth Circuit decisions and Arizona federal district court decisions which make it clear, under those circumstances, you should not be filing a declaratory judgment action in federal court. And so that's why you have a parallel proceeding going on in state court. And I'm just wondering, in the context of any other cases on the court, if the coverage issue could not be raised in the then-pending state court, it's not parallel. Your Honor, I would respectfully suggest that you need to look at the decisions that were cited by the district court on that very issue. There is at least one Ninth Circuit case. I believe it's called the Huffington case. It's the district court decision relating to the discretionary review issue. On the attorney's fees order? Not the attorney's fees issue. It's the underlying decision. Okay. This was extensively briefed in the underlying decision. And there are Ninth Circuit cases which make it clear that you do not have to have a parallel case in terms of the coverage issues in order for this principle to apply, the principle of declining jurisdiction. All you have to have is some factual similarity between the two cases. And that was the problem here, Judge. The problem here was some of the coverage issues were also the same issues, factual issues, that had to be resolved in the underlying case. So on page 9, the Court said it's sufficient that if the state court proceedings arise from the same factual circumstances. Thank you, Your Honor. That's exactly correct. And there's Ninth Circuit law, clear Ninth Circuit law that supports that. And that same law, Your Honor, was cited multiple times by federal district courts in Arizona to decline jurisdiction under circumstances virtually identical to this case. That's important for you to understand. Are you suggesting that then there's sort of a race to the courthouse aspect to it, that if the insurance company files in federal court before the underlying tort case is filed, then there's a different story? No, Your Honor. I think that issue has been addressed by the Ninth Circuit, too. It was not an issue in our case. But the Ninth Circuit says for purposes of applying the Brilhart doctrine, it doesn't matter which action is filed first or second. You look at the status of the case at the time the motion is filed, the motion to dismiss is filed. And if there's a parallel pending state court action, then it's appropriate under those circumstances. I think the Ninth Circuit embanked decision in Dysol specifically says there is a presumption under those circumstances that the case be dismissed. So that's really what we had here. And that underscores the importance of understanding that when an insurance company decides to file a declaratory judgment action in federal court in Arizona, given this history, given all the decisions that I've cited in the briefs, one after the other that says when you have a parallel proceeding, we're not going to exercise our jurisdiction, it's completely appropriate, rational, equitable, and legal to ask for an award of attorney's fees. Because the policy of the State of Arizona, the substantive policy of the State of Arizona relating to attorney's fees awards is to mitigate the expense of litigation. That's in the statute itself, subsection B. And that's exactly why it should apply here. Because when you have an action that is dismissed, where the only relief that's sought is dismissal, in this case by my client, and we prevail in that action, the statute and the substantive policy of Arizona allows for an award of attorney's fees to mitigate the cost of litigation. That is the substantive policy. And if I could spend a few minutes on the preemption issue, judges, to me, there's a waiver issue here. You haven't asked any questions about that. I think that there is a concern here that this issue was not raised below. If it was raised below, it could have made a difference. We'll never know because it wasn't raised below. But if you get to the substantive issue here, as to preemption, the fundamental issue is, does this statute comport and evidence a substantive policy of the State of Arizona that this Court should enforce? Because the Ninth Circuit decision in the MRO communication case, which is cited in our brief, specifically says, as long as State law does not run counter to a valid Federal statute or rule of court, and usually it will not, State law denying the right to attorney's fees or giving a right thereto which reflects a substantive policy of the State should be followed. That's the law as articulated by the Ninth Circuit. So the question here is, does this statute reflect the substantive policy of the State of Arizona? And, Judge Tolman, you mentioned it before. Yes, it does. It does reflect that policy. And the policy, as indicated in the statute itself, is to mitigate the burden and expense of litigation. We cite it to the Ash case, the Arizona Court of Appeals case in our briefs, which says the same thing. This is the policy reflected in the statute. Well, let me get back to the Erie question. Yes. We, I mean, basically we follow the American rule in Federal common law, but there is no, as you point out, there is no Federal statute or rule of court that addresses this specific entitlement to attorney's fees. Our rules of court talk about, for example, assessing attorney's fees on appeal if we find that the argument is frivolous and is interposed for purposes of delay. And you're familiar with the discovery rules in the district court for which sanctions may be imposed. But I don't know of any court rule that would otherwise conflict. You're absolutely right, Judge Tolman. That's why there's no preemption here, because there is no rule of procedure, there is no Federal statute that preempts the substantive policy of the State of Arizona embodied by this attorney's fee statute. Because there's nothing that conflicts with the Arizona statute, there's no reason to preempt it. That's why I think the preemption argument fails on its merits, even if you decide to reach that argument. Speaking of merits, let's assume that I agree with you on, for purposes of my hypothetical, on the preemption issue, is this a merits determination? I mean, you say that you sought dismissal, but had you failed and the district court denied your dismissal motion, then you would have had to proceed, presumably, with discovery and perhaps summary judgment on the legal issue. The case would have gone forward. Oh, sure, Judge. On the merits. Well, it depends on what the merits were at the particular time. When I'm filing a motion to dismiss and asking the court to dismiss this case based on the Brillhart factors, the merits at that particular time were, is there a reason to dismiss the case? Was his dismissal proper under the relevant law that's cited? If the judge disagrees — We usually don't know who the prevailing party is in litigation until a final judgment has been entered. Well — And here, there is a final order, which is appealable, the order of dismissal. But in my hypothetical, had you not won, then there would have been further proceedings, and we wouldn't know who the prevailing party was until the court entered a final judgment. You wouldn't know who the prevailing party is on the coverage issues. That's not the issue in this motion. The motion we prevailed on here has nothing to do with the coverage issues. That's — we concede that. And that issue was addressed in the Pang decision. An adjudication on the merits, according to the court in Pang, this court, is not a prerequisite to recovering under Section 1231.01. A party may be successful without prevailing on the merits of the underlying claims. That's your Ninth Circuit's decision in the Pang case.  is to distinguish between the merits of the coverage action and the merits of the actual motion that's filed by my client. In this case, that was successful. And if you accept the premise, if you accept your decision in Pang, which relies on Arizona appellate authority, the same authority that I cited, then you have to look at Judge Campbell's decision under the premise of — made in connection with the motion dismissed. Were we successful in connection with that motion? Answer, yes. Let me ask you this. It's curious, but suppose Judge Campbell had gone the other way. So now he keeps the case. But you win on coverage. Now you're entitled to attorney's fees. Even under their interpretation. That's right. But you didn't prevail on coverage. You didn't prevail on jurisdiction. But you still get attorney's fees for the time spent arguing about the jurisdictional issue that you lost, because what it means to win is, at the bottom line, who's got more points on the scoreboard and not — if it had been a technical knockout in the first round, you would have won. But if there was a final decision — well, you've got the picture. At the end of the first round, they won. At the end of the tenth round, you won. Therefore, you get fees for all ten rounds. Judge, I'm not a big boxing fan, but if I — to apply your analogy, if you lose a couple of rounds — if you lose round one and two, but you win rounds three through ten, you still win the K. You still win the boxing match. And that's really all that matters here. And if you look at this case from that perspective, we are the successful party. My client's the successful party. And this was a contested action based on the plain language of — and the plain meaning of the statute. You can contest something even if you don't contest it on its underlying merits. The ultimate resolution of this motion was a dismissal of this lawsuit. And as I think Judge Tolman pointed out, no subsequent action was filed by National Union. So as it stands right now, this is the final disposition of this federal court case. So — So they didn't go back and refile a new action in America? That would be news to me if they did. So the bottom line is, in terms of the federal court action, we have a disposition of that case where my client is the successful party. So this is more analogous to a preliminary injunction hearing where the decision to enter injunctive relief or to deny it is essentially a trial on the merits. And once it's determined if no injunctive relief is entered, that's the end of the case. Judge, I don't know about that. There's always — National Union could have filed a lawsuit in state court after this one was filed, and we could have been litigating coverage. That did not happen. I don't know that a dismissal purely on real hard discretionary jurisdictional grounds ends the issue. All it does is end the issue for purposes of the federal court litigation, which is key to why we're asking for attorney's fees. We were successful in that litigation. So, again, the question here is, for purposes of preemption, is there anything that discourages an insurance company from filing a proper action in federal court if the circumstances talked about in all the Ninth Circuit and Arizona federal court cases are satisfied for purposes of discretionary jurisdiction? Absolutely not. They can file the action in federal court if they want to. The only reason why they're complaining here is because, as Judge Campbell pointed out, they filed a declaratory judgment action contrary to all the applicable Ninth Circuit rules, contrary to prior rulings of the district court, and they lost. And under those circumstances, when you look at the merits, you look at all the other factors which Judge Campbell had to look at in order to make a discretionary decision. When you look at all those factors, there's no abuse of discretion here, unless the Court has any more questions. I don't think so. Thank you. Thank you. Okay. Mr. Amador, I think you have a couple minutes left on rebuttal. Yeah, I don't have much time, so I'll try and go fast. Can you talk about Pang? Yes, please. Opposing counsel cited the Pang decision that this Court issued in June. It was superseded in October by another decision. And in that case, this Court remanded to the district court for a determination as to whether under a settlement agreement a party had prevailed as to the majority of his claims. It was an insurance coverage dispute. The district judge now had to figure out who won under that settlement agreement. What's the name of that case? That's also Pang. I don't have the site in front of me. Oh, I'm sorry. But it is the Pang case. It's just a subsequent decision in Pang. I got you. As to deterrence, there's absolutely deterrence here. If we are looking at filing in district court for a declaratory judgment action, and we know that if the judge exercises his discretion to dismiss the action based on abstention grounds and we're going to get hit with attorney's fees every time, that is a major deterrent. But wouldn't you run the same risk if you refiled the action in superior court if the statute applies? I don't understand abstention. If you file a declaratory judgment action, which, for whatever reason, National Union has not done in Merica. That's not in the record, and I don't even know if that's true, by the way. Counsel suggests something else totally outside the record. I will ask it in a hypothetical form, then. If you were to refile the action, the declaratory judgment action, wouldn't the insurance company still run the risk of having to pay attorney's fees if it loses? If it loses on the merit, sure. Well, but suppose that for some reason the Arizona Superior Court dismisses your declaratory judgment action, wouldn't the ---- If we're doing our job correctly, we're going to get to a judgment on the merits in the declaratory judgment action in state court. But in federal court nowadays, it's hard to predict. And counsel suggests that we were just grossly out of line by filing in federal court. That isn't true. When we litigated the Brilhart issue, we had some very persuasive authorities on our side. We were actually surprised that it was dismissed. And under the Daisal case ---- You point out there had been some other district court decisions by colleagues of Judge Campbell that had gone the other way on this issue. Sure. And under Daisal, there's not a presumption in favor of dismissal. So, and counsel keeps talking about how he won on the issue of abstention. Well, that may be true. That wasn't the contested matter at issue, and it wasn't on the merits at issue. So, again, it's really easy to take that telescope and focus it on the wrong issue. But we're talking about the merits of the lawsuit, and that's what the rule of civil procedure talks about. I think that's what the Arizona Supreme Court would do. Thank you very much. Thank you both. I appreciate your argument. The case just argued is submitted. We'll get you an answer as soon as we can.
judges: Garbis, Tallman, Rawlinson